Case No. 16-7082, Saima Ashraf-Hassan v. Embassy of France and the United States Appellant. Ms. Lopez for the Appellant, Ms. Atkinson for the Appellee. Ms. Lopez. Thank you, Your Honor. May it please the Court, I would like to reserve three minutes of my time for rebuttal. We ask this Court to reverse the judgment against the Embassy of France, and I'll address the 2002 pregnancy incident in a bit. But to begin, I'd like to emphasize a few essential big-picture points. As we explained in our briefs, there's insufficient evidence that Ms. Maness, Ms. Ashraf's first supervisor, held any sort of discriminatory animus against Ms. Ashraf based on national origin, race, or religion. The evidence showed only Ashraf's subjective beliefs, that she assumed or understood Ms. Maness to be referring to her or, quote, her people as terrorists. Under well-established case law, subjective evidence is simply not enough. Also, with regard to the supposed comparators, the other pregnant employees who were not Muslim and who were not fired, they are not, as a matter of law, similarly situated. That is, there was no evidence that those employees had committed any sort of dishonesty offense in the same way that Ms. Ashraf had. Now, without those key pieces of evidence, there is nothing supporting the trial court's finding that Ms. Maness's conduct was motivated by national origin, race, religious discrimination. And if you agree with us that there's insufficient evidence regarding Ms. Maness's motives... I just asked once, the dishonesty was that she didn't tell them when she was hired that she was pregnant? To put a finer point on it, the dishonesty was... Seems like a pretty fine point. Is that what we're talking about? It is, but there's a nuance to it, so if you don't mind if I explain the nuance. Ms. Maness, according to Ms. Maness, on April 16, 2002, Ms. Ashraf reported her pregnancy for the first time. And then Ms. Ashraf said, actually, no, I told you in March, mid-March. And Ms. Maness said, I don't have any recollection of you telling me earlier about this. And that was material because the embassy would not have hired a pregnant woman? Is that what you're saying? No, that's not what I'm saying. Then why was it material? It was material because, in Ms. Maness's view, she had lied. Yes, I appreciate that, but why is the lie material? In what way was it... I mean, the way you put it, it sounds like the embassy's position is it doesn't hire pregnant women. That can't possibly be your position. No, no, no. So then why does it matter whether... Why was it material whether she... Even if it were true, why does it matter that she didn't say the date when her pregnancy occurred? There were two reasons why it was important to Ms. Maness to understand when her employees were pregnant. Number one, there was a very generous maternity leave. And I believe the policy at the time was report your pregnancy within the first three months, and then we can plan for your being gone. And so if you tell us during those first three months, you can take advantage of the very generous maternity leave. The second reason was just practical. Mrs. Maness already had two people who were pregnant at the time, and she had to shuffle them around and deal with their being absent. And so when Ms. Ashraf reported her pregnancy, she felt like she was caught flat-footed. Oh, my gosh, I have to now plan for a third person. Had you told me, it would have been a whole lot easier to plan this earlier, because now we're up against a time problem. She was still only, like, three months pregnant under your facts, or even two months pregnant. Correct. So what time crunch is she up against? Well, according to Ms. Maness, she was told after the three-month mark. And, again, Ms. Maness was operating under what she understood to be the policy. So if you agree with us that there's insufficient evidence regarding Mrs. Maness' motives, regarding national origin race discrimination, then all of the conduct, including the conduct we just discussed, falls away as inadequately linked under Baird v. Gottbaum. Assuming you disagree with us on that, I'll go back and talk a little bit more in depth about this much-disputed incident in 2002 to, again, reemphasize why we think it's so important. First, Ms. Ashraf testified at trial that she first reported her pregnancy. Can we just pause for that? So I took it from your briefs that if we don't agree with you, then it is sufficiently linked. If you find that there was adequate evidence that Mrs. Maness' conduct was motivated by racial discrimination, national origin, then, yes, it's linked. So at trial, she testified March 15, 2002. She first reported her pregnancy. Mrs. Maness lectured her the next day, which would have been a Saturday, March 16, and that she supposedly, that is, Ashraf wrote a fax reporting all of this to the Secretary General immediately thereafter, but she didn't send that letter to the Secretary General until April 16, when she was officially told by Ms. Maness that she would be terminated. That timeline we now know simply can't be true. Mrs. Maness was in Paris on March 15 and March 16 and was not back in Washington, D.C., until late March. That is, the story that Mrs. Ashraf told at trial is an impossibility. Add to that fact that for the two years leading up to the trial and in her pretrial statement, she insisted that all of these events took place on April 16, 2002. This is, therefore, not a case where you have two permissible views of the evidence and you should just defer to the fact finder who found one version more credible. Rather, in our view, you have one permissible view of the evidence. But the district court didn't view cases at black and white or zero or one, on or off. The district court, after hearing, linked the argument at briefing, et cetera, made findings and explained his view of how the evidence could be harmonized, so to speak. How are we to find clear error on this one? Well, we think that one of the errors was where the district court was acting as a super-personnel department. It did attempt to harmonize the inconsistencies. But what it did in doing so was it basically accepted a timeline that would have been impossible based on our objective evidence. It also found that the response that Mrs. Maness had chosen, firing, was too harsh. And that's the reason that the judge said. Well, I guess when I was on the district court, I used in these Title VII cases a portion of the model jury instructions from the Third Circuit, because we don't have model instructions in our circuit. One of those instructions says that if, for example, you have a policy against stealing office supplies, and if a woman is found to have taken the pencils home from work and is fired, and there's no question that she did it, but men also take pencils home from work and aren't fired, then you can infer that the stealing of the pencils wasn't the real reason. And it seems to me that what the district court was doing here was doing the same thing, was saying that this wasn't the real reason because it really doesn't seem to make sense. And that's not acting as a super-personnel department under our case law. That's just finding that there's pretext. I understand, and certainly that was what the district court found. In our view, that is error. We think that the district court second-guessed the disciplinary measure that Mrs. Maness chose, based on its own opinion, essentially. In other words, the comparator's evidence, we think, should go out the window because they weren't comparators as a matter of law. So you can't necessarily use the there were men and there were women and the pencils argument because we don't think there are comparators here. There was nobody else. They were pregnant women. They were indeed, but they did not commit. There's no record evidence that they committed any sort of dishonesty offense, which the district court accepted that there had been a dishonesty offense. I see I'm running through my time, so I'll reserve the rest for rebuttal. Ms. Atkinson. May it please the Court. Catherine Atkinson on behalf of Saima Ashraf Hassan, the plaintiff appellee here. Your Honor, the embassy failed to note all of the other evidence that the district court considered when it found that Maness' firing of Ashraf Hassan was motivated by discrimination.  prior comments to Ashraf Hassan that had occurred a couple of months earlier, in which Ms. Maness waved a newspaper and said, Your people have done it again, and why are your people doing this? Need I remind you of the time period? This was December of 2001. The newspapers were filled with articles about Pakistani and Muslim terrorist attacks. The district court considered that. Ms. Maness was not asked about it at all at trial, and the district court found Ashraf Hassan credible with regard to her testimony about it. The district court then looked at the facts surrounding the 2002 termination and held that this was a disproportionate response, even if Ashraf Hassan had lied, which the district court did not conclude. But it said that even if she had, this did not make sense. This did not seem to hold water. I use Judge Boasberg's words that someone would fire a woman upon announcing she was pregnant. To be clear, she was, as the court noted, she was only two months pregnant. Maness at times claimed that this was beyond the three-month period that was required, but it was not. Ashraf Hassan's medical records noting her last menstrual period are a part of the record at Supplemental Appendix 23, and she became pregnant in the middle of February. What do we know about why she was reinstated? When she left, she sent the letter to the secretary general that is in the appendix, and she sent a letter to the ambassador, which we don't have a copy of. It's not in the record. The ambassador called her back, actually while she was at an attorney's office, and asked her to come back to work, and the ambassador told her that he was bringing her back to work, that this was not appropriate. Well, what I was asking was, is there anything in the record about any investigation that the higher-ups did? There's nothing in the record about any investigation. Ashraf Hassan reported discrimination throughout the subsequent years of her employment, such as in 2006, and the embassy never investigated it, and in fact has maintained throughout that Ashraf Hassan never reported discrimination, although we have the e-mails in the record in which she uses the word discrimination, and I'm being targeted because of my national origin on several occasions. Throughout this litigation, the embassy has maintained that Ashraf Hassan's accounting of events is untrue. They say she lied. The district court had this case before it for five years. It listened to three days of trial. Ashraf Hassan was impeached on cross-examination by the embassy for every single day of that three-day trial. She was on the stand for hours. And the court considered her testimony, her demeanor, Manas' testimony, Manas' demeanor, as well as the abundant documentary evidence that corroborated Ashraf Hassan's version of events in making its factual findings and credibility determinations that this constituted a hostile work environment. Questions from the panel? Thank you. Thank you. Ms. Lopez has time. Correct. Just a few points for the record. Mrs. Ashraf testified that she didn't even know which newspaper it was that Ms. Manas was waving, the Washington Post, the New York Times, and she was 25 feet away. Also, Ms. Manas, there's record evidence that she denied referring to Ashraf as a terrorist and denied saying negative things about Muslims in general. And finally, as to the – I'm sorry. What did the judge find on this? The judge accepted Mrs. Manas' inferences that she was referring to her as a terrorist. So we have to say that no reasonable fact finder could have made that determination, right? Correct, because we think it was all subjective. But your evidence is you have testimony by one person and testimony by the other person. It's a little hard for us to say that no reasonable person could have concluded this person rather than that person. That's the reason we have a judge, you know, or a fact finder here. I understand. I'm saying her evidence is insufficient. And finally, as to Your Honor's question about the reinstatement, Mrs. Manas testified that the ambassador said, you know what, we just don't have enough proof that there was a lie. So as far as an investigation, it's a she said versus a she said. And so the ambassador said essentially we have to bring her back. Thank you, Your Honors. Thank you. I will take the matter under submission. Thank you.
judges: Garland, Henderson, Wilkins